## GUNTER v. GUNTER.

(Circuit Court of Appeals, Fifth Circuit. November 23, 1909.)

No. 1,975.

EVIDENCE (§ 271*)—WILLS (§ 58*)—HEARSAY—SELF-SERVING STATEMENTS.

In an action against an executrix to recover on an alleged agreement by the testator to make a bequest to a nephew in consideration of an indebtedness to him for services and advances. where there was evidence tending to support such allegation, and it was admitted that it was the intention of the testator for some time prior to and up to the time of his death to change his will and make such bequest, the only issue being as to whether the promise was based on a valuable consideration, it was error to admit testimony offered by defendant that, in statements made by the testator to friends many years before of his intention to provide for his nephew in his will, he did not mention any indebtedness to him, or that, in more recent financial statements made for the purpose of credit, he did not mention it; such testimony being not only hearsay and of self-

serving statements, but also irrelevant and misleading, since the indebtedness may have arisen after the former statements were made, and there was no occasion to mention it in credit statements, if, as alleged by plaintiff, it was to be settled by bequest in his will.

[Ed. Note.—For other cases, see Evidence, Dec. Dig. § 271;* Wills, Dec. Dig. § 58.*]

In Error to the Circuit Court of the United States for the Eastern District of Texas.

Action by Jule Gunter against Roxanna Gunter. Judgment for defendant, and plaintiff brings error. Reversed.

W. O. Davis, for plaintiff in error.

Don A. Bliss and C. L. Gallaway, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

McCORMICK, Circuit Judge. The petition in this case alleges, in substance: That Jule Gunter, plaintiff, is a citizen of the state of Oklahoma. That Mrs. Roxanna Gunter, the defendant, is a citizen of the state of Texas, and is the surviving wife and sole devisee of Jot Gunter, deceased, who was a citizen of Texas in his lifetime, but who departed this life therein during the month of April, 1907, possessed of an estate exceeding $500,000 in value. That Nat Gunter was a brother of the plaintiff, and a nephew of Jot Gunter, and was a citizen of the state of Texas, and departed this life testate, leaving a will in his own handwriting, by which he bequeathed to the plaintiff all of his property, real, personal, or mixed, of whatever kind and wherever situated, in fee simple and without condition, which was duly probated and is now in full force and effect. That there is no administration upon the estate of Nat Gunter, or necessity therefor; all of his debts having been paid. That Jot Gunter in his lifetime had large business interests throughout Texas, and about 15 years ago owned a large body of land, consisting of several thousand acres, situated in Grayson county, Tex., and, while the title thereto was in the name of Jot Gunter, Nat Gunter and one Hardy each had an interest therein to the extent of one-third of all profits to arise therefrom; and previous thereto Nat Gunter had turned over and delivered to Jot Gunter the sum of $12,000, or some such large sum, the exact amount of which the plaintiff does not know, to be used in real estate speculation in the city of Dallas, Tex., on their joint account, and which was so used. That about 15 years ago, while Nat Gunter and Hardy were interested as aforesaid in the Grayson county lands, and while the land was of the value of about $20 an acre, but was incumbered by mortgage to the extent of about $4 an acre, Jot Gunter, becoming financially embarrassed and threatened with bankruptcy, in order to relieve his financial embarrassment and to prevent bankruptcy, desired to execute a new mortgage upon the lands and to raise a large sum of money thereon to be used in tiding over his financial embarrassment, and Nat Gunter thereupon, at the request of Jot Gunter, executed a release to his interest in the lands with the understanding then and there had between them that, as soon as Jot Gunter recovered from

his financial embarrassment, he would pay Nat Gunter either for his interest in said land, which was worth many thousand dollars, or he would execute a valid will in favor of Nat Gunter, whereby he would devise and bequeath to Nat Gunter a sufficient sum to compensate him for money advanced, services rendered, or otherwise. And that soon thereafter Jot Gunter did write and execute a will in conformity with law, whereby he devised and bequeathed to Nat Gunter a one-tenth interest in his estate, which interest was admitted to be about the sum of $40,000. That for a period of at least 20 years Nat Gunter served Jot Gunter in superintending his ranches, cattle, and various other interests, without salary and compensation, and the will above mentioned was in existence for many years, but Jot Gunter, some time thereafter, executed another will, whereby he bequeathed to his wife, the defendant, Roxanna Gunter, his entire estate, making her the independent executrix of the will, and directing that no action should be had in the county court with reference to his estate, which will was duly probated after the death of Jot Gunter, and the defendant thereunder is now in possession of his estate as independent executrix. That, at the time of the execution of the will, Jot Gunter had no intention of repudiating or denying his obligation to Nat Gunter, but intended to otherwise compensate Nat Gunter, or else he had an understanding and agreement with his wife that she should do so. That afterwards, during the spring of 1907, and shortly before the death of Jot Gunter, it was agreed between Jot Gunter and Nat Gunter that Jot Gunter was indebted to Nat Gunter in the sum of $40,000 on account of interest of Nat Gunter in the Grayson county lands, and for the various services which Nat Gunter had rendered to Jot Gunter, and Jot Gunter then agreed that for the consideration aforesaid he would execute a will in favor of Nat Gunter, whereby he would devise and bequeath to Nat Gunter the sum of $50,000, $40,000 of which should belong absolutely and unconditionally to Nat Gunter, the remaining $10,000 to be held and used in trust, but the necessity for such trust does not now exist. That, pursuant to the agreement, Jot Gunter entered upon the execution of his will, and instructed his attorney to write and prepare a will in accordance with the agreement, and therein to bequeath and devise to Nat Gunter the sum of $50,000, $10,000 of which was to be in secret trust as aforesaid, though not to be specified. That pursuant to that agreement and the instruction of Jot Gunter, the attorney was engaged in the preparation of the will, when Jot Gunter became suddenly ill and unable to proceed with said will, and died without completing the same. That the agreement of Jot Gunter to execute the will in favor of Nat Gunter was made upon a valuable consideration and is enforceable in law, notwithstanding which, the defendant, since the death of Jot Gunter, has refused and still refuses to recognize the agreement, and refused to pay Nat Gunter, although often thereto requested, the sum of $40,000, and, since the death of Nat Gunter, has refused and still refuses to recognize the agreement, the defendant has refused to pay to plaintiff the said sum or any other sum in satisfaction of said agreement. That the plaintiff concedes that he is morally, though not legally, indebted to the estate of Jot Gunter in the sum of $15,000, which sum he is

willing to have deducted from whatever judgment he may recover in this case.

The defendant pleaded the general issue and, for special answer, the statutes of limitation of two and four years, and that the defendant does not deny, but expressly admits, that Jot Gunter repeatedly stated that he intended to make a provision for Nat Gunter in his will; and "this defendant further expressly admits that Jot Gunter had the intention to make a provision for Nat Gunter by his will up to the time of his death, but this was not on account of any debt or obligation that he owed Nat Gunter, but on account of the love and affection he had for Nat Gunter." The other pleas are not necessary to notice.

There was a verdict and judgment in favor of the defendant. The bill of exceptions shows that on the trial the plaintiff introduced evidence tending to sustain the allegations in his petition, and tending to show that Jot Gunter, in consideration of rights surrendered to him by Nat Gunter, money advanced, and services rendered, agreed with and promised Nat Gunter to execute a will in his favor, thereby devising to him $50,000, $40,000 of this to be the absolute property of Nat Gunter, the remainder to be upon trust, the necessity for which no longer exists. It shows that, on the other hand, the defendant introduced testimony to show that Jot Gunter was not indebted to Nat Gunter, and was under no pecuniary obligation to him, but that whatever promise, if any, was made by Jot Gunter to Nat Gunter to provide for him by will, was in consideration of love and affection, and a mere gratuity. The bill of exceptions further shows that W. W. Gunter, the father of Nat Gunter and a brother of Jot Gunter, had raised Jot Gunter as one of his own family from the time he was a small boy and educated and provided for him as his own son, without charge; and that Jot Gunter, soon after his marriage, took Nat Gunter when he was a small boy and raised him as one of his family, and educated him as he would his own son, without charge. It then shows that, during the introduction of the testimony in behalf of the defendant, the following, among other proceedings, were had:

First. Judge T. J. Brown, being a witness in behalf of defendant, and having testified that he was well acquainted with Jot Gunter in his lifetime, and in like manner with Nat Gunter in his lifetime, and that for several years Nat Gunter was his partner in the practice of law, was permitted to testify, over the objection of plaintiff, that the same was hearsay and self-serving, that Jot Gunter told him more than once that he intended to provide for Nat Gunter in his will. To which the plaintiff then and there excepted.

Second. Dr. Amos Graves, a witness in behalf of defendant, after having testified that he was intimately acquainted with Jot Gunter for 12 years preceding his death, and that he and Jot Gunter were close, intimate, and confidential friends, and that Jot Gunter had discussed his private affairs and his indebtedness and property matters with him, and told him of his debts, was permitted to testify, over the objection of the plaintiff, that the same was hearsay and self-serving: "I never did hear Jot Gunter say anything about owing Nat Gunter anything. He told me he owed $160,000. I was trying to get him to do business at Sullivan's bank, instead of at Ft. Worth. I repeated his affairs to Sullivan and told Sullivan who he was and what debts he owed." Which objection was overruled by the court and said evidence permitted to go to the jury. To which the plaintiff then and there excepted.

Third. Don A. Bliss, a witness in behalf of defendant, after having testified that he was the attorney of Jot Gunter, that he and Jot Gunter were as close and confidential as any two men ever get to be, that their intimacy was such

that Jot Gunter would disclose to him his private business, indebtedness, and property matters, and everything pertaining to his private business, was permitted to testify, over the objection of the plaintiff, that the same was hearsay and self-serving, in substance as follows: "Jot Gunter never did mention to me any pecuniary obligation to Nat Gunter. I would like to make that clear. I will state that the last time he went over that was in San Antonio in 1896. I prepared a statement myself when he was seeking to get credit, a full statement of his assets and all of his liabilities, with the proposition that he was to swear to it." Which objection was overruled by the court, and said testimony permitted to go to the jury. To which the plaintiff then and there excepted.

Fourth. And further, while Don Bliss was testifying in behalf of defendant, and after he had stated that Nat Gunter was at San Antonio and with Jot Gunter at the time of his death, he was permitted to testify, over the objection of the plaintiff, that it was irrelevant, immaterial, hearsay, and self-serving, in substance as follows: "In March, 1906, Jot Gunter spoke to me about writing his will. He told me he wanted to make a provision for Nat Gunter. I asked him to dictate the kind of a will he wanted to make. He replied: 'I have not made up my mind exactly how I want to leave it to him and how much, and I want to study over that.' This same matter was talked over between us from time to time up to the time of his death. He would sometimes bring it up himself and sometimes I would mention it, and every time he expressed the intention of providing for Nat Gunter, and the last time he mentioned it he said: 'We must get together some time when nobody will interrupt us, and I want to go over the whole thing. I want us to get together and frame that provision for Nat. I want to see him provided for and taken care of the balance of his life. I am likely to forget that.' He always put it off and never did do it. Soon after Jot Gunter's death, while Nat Gunter was in San Antonio, I told Nat these things. I further informed Nat that in 1886 Jot Gunter stated to me that he made a will, and that Jot Gunter said Judge Bryant drew the will, and in that will he had bequeathed to him (Nat) 10 per cent. of his half of the property, not to exceed $50,000, and the balance he had left to his daughter, Eula." Which objection was overruled by the court and said testimony permitted to go to the jury. To which the plaintiff then and there excepted.

The assignment of errors presents, in substance, that the court erred in admitting, over the objection of the plaintiff, the testimony of T. J. Brown, Dr. Amos Graves, and Don A. Bliss, as just above recited from the bill of exceptions; and that the court erred in refusing certain requested charges tendered by the plaintiff. We are of the opinion that the court did err in admitting the testimony referred to in the assignment of errors.

It is clear from the bill of exceptions that the plaintiff introduced evidence tending to show that Jot Gunter had promised and agreed to make a will in favor of his nephew, Nat Gunter. The real issue was and is whether Jot Gunter was under such pecuniary obligation to Nat Gunter as to render this promise enforceable in law. In other words, the issue is whether Jot Gunter was under any pecuniary obligation to Nat Gunter. The counsel for the plaintiff in error, who was also counsel for the plaintiff below, suggests, with much probability: That it was many years ago that Judge T. J. Brown, now and for the last 20 years on the Supreme Bench of Texas, was in partnership with Nat Gunter, and it was doubtless about that time that Jot Gunter told Judge Brown that he intended to provide for Nat Gunter in his will, and that the judge's evidence was introduced for the purpose of showing that Jot Gunter, prior to the time when he could have been indebted to Nat Gunter, contemplated making a will in his favor, and that it was thus sought to indirectly show by Jot

Gunter's declarations that there was no consideration for his future promise to make a will. That the introduction of Dr. Graves' testimony had the same purpose, and being that Jot Gunter made a statement of his indebtedness to Sullivan's bank and in that statement did not mention any indebtedness to Nat Gunter, which statement was made in the absence of Nat Gunter, is a self-serving statement of an interested party, and that it was to the highest degree lacking in probative force. That the statements of Jot Gunter and Don A. Bliss are of the same character. That by the evidence of these witnesses the inference is sought to be drawn that if Jot Gunter had been indebted to Nat Gunter he would have mentioned that fact, while the truth is that Jot Gunter would not have regarded his obligation to Nat Gunter as a debt affecting his credit, for this obligation to Nat Gunter was to be provided for in his will, or at least postponed until his other debts were paid. For the error of the court in admitting this evidence, the judgment must be reversed.

As to the other error assigned, we think that the refused charges embraced one pertinent feature which is at least not expressed with sufficient clearness in the charge given by the court. The element to which we allude is indicated in these words of the first requested charge:

"Even though you should believe that said Jot Gunter may have been partly influenced by love and affection for said Nat Gunter."

With the exception of the principle indicated by the language just quoted from the rejected charge, the substance of the request is sufficiently embraced in the charge of the court. We incline to the opinion that, if the competent testimony given on another trial is substantially the same as that which was properly admitted on this trial, the doctrine indicated in the language quoted from the rejected charge should be given in the instructions of the court to the jury.

Reversed and remanded.